UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**PROMUNDO-US**,

    Plaintiff,

v.

**DEPARTMENT OF HEALTH AND HUMAN SERVICES**, *et al.*,

    Defendants.

Case No. 18-cv-2261 (CRC)

## MEMORANDUM OPINION

In 2010, Congress established the Teen Pregnancy Prevention Program ("TPPP"), which offers grants to state and local agencies and non-profit organizations working to reduce teen pregnancy. The Department of Health and Human Services ("HHS") awards and administers these grants. The grants run for five years, with funding allocated in annual installments so long as the recipient continues to meet eligibility criteria. In 2017, HHS announced without explanation that it would terminate funding for all ongoing TPPP grants two years early. Subsequent grant announcements revealed that the early termination was due to a shift in HHS's approach to teen pregnancy prevention under the present Administration. Whereas before, eligible grants covered programs employing a wide range of evidence-based prevention strategies, HHS now emphasizes programs aimed at promoting abstinence.[1] Plaintiff Promundo-US—which operates a TPPP-funded study designed specifically for young men of color—was among the recipients whose grants were defunded prematurely.

---

[1] The legality of these grant announcements has been the subject of other litigation, and is not before this Court. See, e.g., Planned Parenthood of N.Y. City, Inc. v. HHS, 337 F. Supp. 3d 308 (S.D.N.Y. 2018), cross appeals filed No. 18-3231 (2d Cir. Oct. 26, 2018), No. 18-3361 (2d Cir. Nov. 6, 2018)

A number of TPPP grantees sued HHS soon after learning of the early termination and succeeded in obtaining court orders requiring the agency to fund the last two years of their grants based on the original eligibility criteria.[2] Promundo, however, waited nearly a year after receiving notice of the defunding to file this suit seeking similar equitable relief under the Administrative Procedure Act. HHS does not defend the early termination of Promundo's funding. Instead, it moves to partially dismiss Promundo's claims for lack of subject matter jurisdiction. HHS argues that Promundo's claim for funding for the fourth year of its grant is moot because by the time Promundo filed suit, HHS had already obligated all appropriated funds for that grant period to other recipients. In support of this argument, HHS relies on City of Houston v. Department of Housing & Urban Development, 24 F.3d 1421 (D.C. Cir. 1994), where the D.C. Circuit applied the "well-settled" constitutional principle that "when an appropriation has lapsed or been fully obligated, federal courts cannot order the expenditure of funds that were covered by that appropriation." Id. at 1424. As for the fifth and final grant year, for which funds remain, HHS asks the Court to remand the case to the agency so that it can determine whether Promundo still should receive funding given that the funding disruption has caused it to scale back its study.

The Court heard oral argument on HHS's motion on May 31, 2019. Based on the briefing and argument, the Court agrees with HHS that Promundo's claim to funding for the fourth grant year is moot under City of Houston, which obviously is binding on this Court. The

---

[2] See Policy & Research, LLC v. HHS, 313 F. Supp. 3d 62 (D.D.C. 2018) (Brown Jackson, J.); Healthy Futures of Texas v. HHS, 315 F. Supp. 3d 339 (D.D.C. 2018) (Brown Jackson, J.); Planned Parenthood of Greater Wash. & N. Idaho v. HHS, 328 F. Supp. 3d 1133 (E.D. Wash. 2018) (Rice, J.); Healthy Teen Network v. Azar, 322 F. Supp. 3d 647 (D. Md. 2018) (Blake, J.); King Cty. v. Azar, 320 F. Supp. 3d 1167 (W.D. Wash. 2018) (Coughenour, J.).

Court finds further that Promundo's claim to funding for the fifth year is not ripe because HHS has conceded that the early termination was unlawful but has not yet made a funding decision for that year. Government counsel represented at the hearing that HHS has set aside sufficient funds for the fifth year of Promundo's grant pending receipt of a satisfactory application for continued funding. As the Court indicated at the hearing, it would be unfortunate to say the least if HHS were to deny Promundo's application based on changes to its program brought about by HHS's unlawful termination of funding. But the Court will leave it to the agency to make that determination in the first instance.[3]

I. **Background**

Each year since 2010, Congress has appropriated funds to HHS for "grants to public and private entities to fund medically accurate and age appropriate programs that reduce teen pregnancy." Consolidated Appropriations Act, 2010, Pub. L. No. 111-117, 123 Stat. 3034, 3253 (2010) ("2010 CAA"); Consolidated Appropriations Act, 2018, Pub. L. No. 115-141, 132 Stat. 348, 733 (2018) ("2018 CAA"). Funds are allocated to two "tiers" of grants: "Tier 1" grants are designated "for replicating programs that have been proven effective through rigorous evaluation to reduce teenage pregnancy" and "Tier 2" grants are designated for programs seeking "to develop, replicate, refine, and test additional models and innovative strategies for preventing teenage pregnancy." 2018 CAA, 132 Stat. at 733. HHS solicits applications for TPPP grants through Funding Opportunity Announcements ("FOA"). HHS issued an FOA in 2010 for an initial batch of five-year grants, followed by a second set of FOAs in 2015. The 2015 FOAs split

---

[3] While HHS's partial motion to dismiss was pending, Promundo filed a motion for expedited summary judgment and a preliminary injunction. Pl.'s Mot. Expedited Summ. J. & Prelim. Inj. ("Pl.'s MSJ"), ECF No. 21. The Court denies that motion as moot.

the tiers into subparts. As relevant here, Tier 2C covers pregnancy-prevention projects designed specifically for young men.

Promundo is one of three Tier 2C grantees. Compl., ECF No. 1, ¶¶ 3, 11, 32, 37. Promundo's grant commenced in September 2015 and was to run through September 29, 2020, with the expectation that funding would be renewed in yearly installments known as budget periods. To receive funding for each subsequent budget period, Promundo is required to submit annual continuation applications. Gerardi Decl. Ex. E, 2015 Funding Opportunity Announcement ("2015 FOA"), ECF No. 14-4, at 122–26. Promundo received $500,000 for its first budget period, which ran from September 30, 2015 to September 29, 2016. Compl. ¶¶ 12, 38; Gerardi Decl. Ex. A, 2015 Notice of Award, ECF No. 14-4, at 5. It received $565,000 for its second budget period, which ran from September 30, 2016 to September 29, 2017. Compl. ¶¶ 12, 39; Gerardi Decl. Ex. B, 2016 Notice of Award, ECF No. 14-4, at 36. And it received $617,183 for its third budget period, which ran from September 30, 2017 to September 29, 2018. Compl. ¶¶ 12, 40; Gerardi Decl. Ex. C, 2017 Notice of Award, ECF No. 14-4, at 52.

In November 2017, during the third budget period, HHS notified Promundo that its five-year project period would be shortened by two years, ending with that budget period on September 29, 2018. Compl. ¶¶ 4, 48; Gerardi Decl. Ex. D, 2017 Revised Notice of Award, ECF No. 14-4, at 71. Then, in April 2018, HHS issued an FOA for a new cohort of Tier 2 grantees under revised substantive criteria emphasizing "sexual risk avoidance"—that is, abstinence-based strategies. See Gov't Mem. in Supp. Mot. Dismiss ("Gov't MTD"), ECF No. 14-1, at 3. Promundo submitted its continuation application for the fourth budget period, Compl. ¶ 61, but did not submit an application under the new FOA, Gov't MTD at 3. Promundo has not received funding for its fourth budget period. Compl. ¶ 68.

At issue here are the two remaining budget periods of Promundo's initial five-year grant: the current, fourth budget period (which started September 30, 2018 and will end September 29, 2019) and the fifth and final budget period (which is set to start September 30, 2019 and end September 29, 2020).

HHS does not defend its decision to terminate Promundo's five-year TTPP grant—which, as noted above, numerous courts have found unlawful. Instead, it moves to partially dismiss the case for lack of jurisdiction. It argues that Promundo's claim for the fourth budget period (the current one for which Promundo has not received funding) is moot. According to HHS, by the time Promundo filed suit on September 28, 2018, HHS had already obligated all of the funds from Congress's 2018 TPPP appropriation—the appropriation HHS says was meant to fund the fourth budget period. HHS faults Promundo for not filing suit earlier and for not seeking to enjoin the agency from obligating those funds. In addition, HHS asks the Court to remand Promundo's claim for the fifth budget period, which will begin September 30, 2019. According to the government, Promundo has not yet applied for those funds and has admittedly had to scale back its operations due to lack of funding for the fourth budget period, see Compl. ¶ 59; therefore, HHS says, the agency needs to evaluate whether Promundo still qualifies for funding for its last year.

Also before the Court is Promundo's motion for expedited summary judgment and a preliminary injunction. Promundo asks the Court to declare HHS's decision to shorten Promundo's TTTP grant period unlawful and seeks to have HHS reinstate its TPPP grants for the awarded five-year project period in the same manner as prior to the unlawful termination. HHS maintains that there is no reason for the Court to grant summary judgment in Promundo's favor

given that the agency is not defending the legality of its actions and that the only remaining legal issue is whether the claims are moot.

## II. Standard of Review

HHS has moved to dismiss part of Promundo's complaint as moot. "A motion to dismiss for mootness is properly brought under [Federal] Rule [of Civil Procedure] 12(b)(1) because mootness itself deprives the court of jurisdiction." Indian River Cty. v. Rogoff, 254 F. Supp. 3d 15, 18 (D.D.C. 2017). When evaluating a motion to dismiss, the Court must "treat the complaint's factual allegations as true and must grant [the] plaintiff the benefit of all inferences that can be derived from the facts alleged." Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (citations and quotations omitted). Unlike some jurisdictional questions such as standing or ripeness, the party asserting mootness bears the "initial heavy burden" of establishing that the case is moot. Honeywell Int'l, Inc. v. NRC, 628 F.3d 568, 576 (D.C. Cir. 2010) (citation and quotations omitted). The issue of ripeness also falls under Rule 12(b)(1). See Venetian Casino Resort, LLC v. EEOC, 409 F.3d 359, 363–64 (D.C. Cir. 2005).

## III. Analysis

### A. Fourth Budget Period

HHS has moved to dismiss as moot Promundo's claim for funding for the fourth budget period of its 2015 TPPP grant. According to the agency, it can no longer make a grant award for this budget period because the funds it would have used—Congress's fiscal year 2018 TPPP appropriation—are no longer available. Gov't MTD at 5. HHS explains that it would have used funds from that particular appropriation because of the way it has structured TPPP grants: "funds obligated in one fiscal year" by the appropriation of that year "will fund activities in the subsequent fiscal years." Gov't Reply in Supp. of MTD ("Gov't Reply MTD"), ECF No. 18, at

6

6. Take the first budget period, which ran from September 30, 2015 to September 29, 2016. This period almost completely corresponds to fiscal year 2016—which spanned October 1, 2015 to September 30, 2016—but the funds for this period were obligated during fiscal year 2015, on September 2, 2015, using the fiscal year *2015* TPPP appropriation.

The record shows that legal and practical constraints led HHS to fund the program this way. Congress was more than three months away from passing the 2016 TPPP appropriation when Promundo received its first grant award in September 2015. See Consolidated Appropriations Act, 2016, Pub. L. No. 114-113, 129 Stat. 2242 (Dec. 18, 2015). HHS therefore had to use the then-current fiscal year 2015 appropriated funds at the time of obligation to avoid running afoul of the Anti-Deficiency Act, which prohibits the government "from entering into a contract for future payment of money in advance of, or in excess of, an existing appropriation." Hercules, Inc. v. United States, 516 U.S. 417, 427 (1996); 31 U.S.C. § 1341. And as a practical matter, HHS has had no reason to deviate from this fiscal structure. The agency accepts continuation applications in the spring and summer, and then obligates funds *before* the coming budget period over the summer and into early September, at which point the only funds available are from the then-current fiscal year appropriation. For example, Promundo's second award was issued August 11, 2016, when only fiscal year 2016 TPPP appropriated funds were available. See 2016 Notice of Award at 35; Consolidated Appropriations Act, 2017, Pub. L. No. 115-31, 131 Stat. 135 (May 5, 2017). Promundo's third award was issued September 8, 2017, when only fiscal year 2017 TPPP appropriated funds were available for obligation. See 2017 Notice of Award at 51; 2018 CAA. As HHS explains, this kind of fiscal structuring is commonplace in grant administration because agencies need time to evaluate applications and also need to wait to see how much money Congress appropriates for particular programs. Gov't Reply MTD at 6.

"It is a well-settled matter of constitutional law that when an appropriation has lapsed or has been fully obligated, federal courts cannot order the expenditure of funds that were covered by that appropriation." City of Houston v. Dep't Hous. & Urban Dev., 24 F.3d 1421, 1424 (D.C. Cir. 1994). "Thus, to avoid having its case mooted, a plaintiff must both file its suit before the relevant appropriation lapses *and* seek a preliminary injunction preventing the agency from disbursing those funds." Id. at 1427. In City of Houston, the city challenged the decision of the Department of Housing and Urban Development ("HUD") to reduce its fiscal year 1986 community development block grant ("CDBG") in the middle of that year. Id. at 1424–25. The D.C. Circuit found the case "moot on two independent grounds." Id. at 1427. First, more than six months before Houston filed suit in April 1989, "the agency contractually obligated its entire 1986 CDBG entitlement appropriation from Congress." Id. (citation and quotations omitted). And second, "the fiscal year 1986 CDBG appropriation lapsed on September 30, 1988, and [] Houston did not seek a stay of the appropriation's expiration prior to that date." Id.

HHS argues that City of Houston directly controls this case. The agency avers that by the time Promundo filed suit on September 28, 2018—right before the end of fiscal year 2018 and the third budget period, and right before the beginning of the fourth budget period—HHS had already obligated its remaining Tier 2 TPPP funds for that period. Gov't MTD at 5, 7. Because the relevant appropriation for the grant period in question—the 2018 TPPP appropriation—has been otherwise obligated, HHS says, Promundo's claim regarding its fourth budget period is moot. Promundo does not dispute the general proposition that courts cannot order agencies to expend funds from a lapsed or otherwise obligated appropriation. Nor does it contest HHS's representation that it has allocated all fiscal year 2018 TPPP appropriated funds. It argues, rather, that HHS could simply fund its current fourth budget period with monies from the current

8

*2019* appropriation, which HHS concedes are still available. Pl.'s Reply in Supp. MSJ ("Pl.'s Reply MSJ"), ECF No. 24, at 2; Pl.'s Sur-Reply to MTD, ECF No. 20, at 1. The question, then, is whether the Court can order that alternative relief under the APA.

Section 702 of the APA represents a limited waiver of sovereign immunity for claims of "legal wrong [sustained] because of agency action . . . seeking relief *other than money damages*." 5 U.S.C. § 702 (emphasis added). But as the Supreme Court has explained, "[t]he fact that a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize the relief as 'money damages.'" Bowen v. Massachusetts, 487 U.S. 879, 893 (1988). The distinction lies between "specific" and "substitutionary" relief. In this context, "money damages" "refers to a sum of money used as compensatory relief. Damages are given to the plaintiff to substitute for a suffered loss, whereas specific remedies 'are not substitute remedies at all, but attempt to give the plaintiff the very thing to which he was entitled.'" Dep't of Army v. Blue Fox, Inc., 525 U.S. 255, 262 (1999) (quoting Bowen, 487 U.S. at 895).

HHS again relies on City of Houston, as well as two more-recent decisions from other circuits involving yearly grant appropriations, to contend that the "very thing" to which Promundo is entitled is a fourth budget period *funded by the fiscal year 2018 TPPP appropriation*, which is no longer available. Awarding Promundo funds from a different appropriation, HHS argues, would constitute substitutionary rather than specific relief. Gov't Reply MTD at 8–9; Gov't Opp. to MSJ, ECF No. 23, at 2. In City of Houston, the city attempted to avoid mootness by arguing that HUD had "funds available from sources other than the 1986 appropriation"—including $12 million "recouped from other grantees"—which Houston said should be treated as "'no-year' funds that are not reserved for use in any particular year or for particular projects." 24 F.3d at 1428. The D.C. Circuit rejected this argument, explaining that

9

under Bowen, a monetary award constitutes specific relief available under § 702 of the APA "when a court orders a defendant to pay a sum owed out of a specific *res*." Id. Although there was nothing in the text of the 1986 CDBG appropriation—which expired at the end of fiscal year 1988—requiring that it be used to fund 1986 CDBGs, see Pub. L. No. 99-160, 99 Stat. 909 (1985), the D.C. Circuit pegged the "specific *res*" to the appropriation used to fund that year rather than to *any* CDBG appropriation. The court categorically stated that an "award of monetary relief from any source of funds other than the 1986 CDBG appropriation would constitute money damages rather than specific relief, and so would not be authorized by APA section 702." City of Houston, 24 F.3d at 1428. Put simply, it did not matter for purposes of § 702 that the agency had some residual funding that it was otherwise free to allocate.

The Second Circuit adopted City of Houston's "specific *res*" approach in another case involving yearly grant appropriations. In County of Suffolk, New York v. Sebelius ("Suffolk County"), 605 F.3d 135 (2d Cir. 2010), the court explained that "in cases challenging an agency's expenditure of funds, the *res* at issue is identified by reference to the congressional appropriation that authorized the agency's challenged expenditure." Id. at 141. The plaintiffs in Suffolk County argued that HHS had underpaid them when awarding grant funds for an HIV/AIDS program in fiscal years 2007 and 2008. They sued for additional funding for those years. Id. at 137–38. The Second Circuit concluded that, "to the extent that plaintiffs seek to force HHS to return property to [the counties], [] the *res* at issue is the funds appropriated by Congress for this grant program for [fiscal years] 2007 and 2008." Id. at 141. Because "HHS had distributed the funds that were appropriated by Congress for those fiscal years to other" program participants, the court found the claims for those years moot. Id. at 139. Money from

10

any other appropriation would function as a substitute remedy beyond § 702's limited waiver of sovereign immunity. Id. at 143.

More recently, the Tenth Circuit relied on both City of Houston and Suffolk County to similarly distinguish between "original funds" and "substitute funds" under § 702. Modoc Lassen Indian Hous. Auth. v. U.S. Dep't of Hous. & Urban Dev. ("Modoc Lassen"), 881 F.3d 1181, 1197 (10th Cir. 2017) (citing Suffolk County, 605 F.3d at 141; City of Houston, 24 F.3d at 1428), cert. denied sub nom. Fort Peck Hous. Auth. v. Dep't of Hous. & Urban Dev., 139 S. Ct. 59 (2018). In Modoc Lassen, HUD determined that the plaintiff tribes had previously received overpayments under the Native American Housing Assistance and Self-Determination Act ("NAHASDA"); the agency deducted the alleged overpayments from the tribes' subsequent yearly NAHASDA allocations; and the tribes sued for the return of those funds. Id. at 1186, 1195. Siding with the tribes, the district court ordered HUD to refund the deductions "from all available sources," including currently available funds and funds to be appropriated in future years. Id. at 1196. The Tenth Circuit reversed. Over a dissent, the Modoc Lassen majority concluded that "the district court [had] awarded the Tribes money damages" beyond § 702's limited waiver "when it ordered HUD to compensate them using funds from grant years other than the grant years during which HUD wrongfully collected the alleged overpayments." Id. As in City of Houston and Suffolk County, the "specific *res*" was "the relevant yearly appropriations" for the challenged agency action, not other appropriations still available for obligation—including both future appropriations for the same statutory program as well as funds the agency itself treated as interchangeable from year to year. Id. at 1198.

The Modoc Lassen majority offered two examples to clarify the difference between specific and substitutionary (monetary) relief in the context of yearly grant appropriations. First,

11

one of the plaintiff tribes, the Choctaw, sought the "return of the 2003, 2004, and 2005 funding that HUD wrongfully withheld." Id. at 1196. Thus, "the 'very thing' to which the Choctaw said it was entitled was additional funding from Congress' 2003, 2004, and 2005 NAHASDA appropriations." Id. But because "HUD had already distributed the funds from those yearly appropriations to other tribes," the district court's award of "past- or future-year NAHASDA appropriations" constituted a substitute remedy beyond § 702's limited waiver. Id. As a contrasting example, the district court had also ordered HUD to set aside a portion of the 2008 NAHASDA appropriation. The court of appeals explained that to the extent any tribes alleged that HUD had wrongfully withheld funds from *that* year, and the funds set aside were sufficient to cover the withholdings, the "sovereign-immunity analysis doesn't apply." Id. at 1196 n.10. So, as in Houston and Suffolk, the Tenth Circuit expressly linked the specific *res* to the specific appropriation year.

In sum, HHS argues that under City of Houston, Suffolk County, and Modoc Lassen, the specific *res* for Promundo's fourth budget period is the one the agency would have used to fund that period—the 2018 TPPP appropriation, which is no longer available for obligation. See Gov't Opp. to MSJ at 2. As a result, HHS continues, any order requiring it to substitute those funds with funds from subsequent appropriations would constitute an award of money damages that is not available under § 702.

Promundo dismisses HHS's reliance on this case law and § 702's bar on money damages as a "straw-man argument," insisting that it seeks "the 'specific relief' of an order requiring HHS to fulfill its obligations for the final two years of the grant." Pl.'s Reply MSJ at 6 (quoting Bowen, 487 U.S. at 900). But it fails to grapple in any substantive way with City of Houston's discussion of specific relief in the context of yearly grant appropriations.

12

Without reference to case law, Promundo asserts that the "fiscal identi[t]y of the funds used is immaterial" because it seeks specific relief in the form of grant awards for its final two budget periods. Pl.'s Reply MSJ at 5. However, City of Houston establishes that the fiscal identity of funds *is* dispositive in cases involving yearly grant appropriations. As explained above, Houston had argued that HUD could replace the unavailable 1986 appropriation with funds recouped from other CDBG grantees because those funds were "not reserved for use in any particular year or for particular projects." City of Houston, 24 F.3d at 1428. The D.C. Circuit rejected this argument, reasoning that even these general "'no-year' funds" would constitute money damages because they weren't from the 1986 appropriation specifically. Id.; see also Modoc Lassen, 881 F.3d at 1198 (rejecting tribes' argument that because HUD itself treated NAHASDA appropriations interchangeably, a court could too).

Relatedly, Promundo attempts to distinguish Modoc Lassen on the simple basis that the tribes in that case were seeking the return of "money (not grants)." Pl.'s Reply MSJ at 6. But again, the Tenth Circuit concluded that the relief sought was barred by § 702 because HUD had already re-obligated the withheld grant funds, not because it would result in a transfer of money. See supra 11–12. This hews to the Supreme Court's explanation in Bowen that the "fact that a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize the relief as 'money damages.'" Bowen, 487 U.S. at 893.

Finally, Promundo's briefing hints at a temporal distinction between this case and HHS's supporting authorities. It notes, for example, that the agency "never executed a funding document for the fourth budget period, so the Court would be directing the issuance of a *new* award, as opposed to reviving an earlier-issued award." Pl.'s Reply MSJ at 5. True, HHS terminated Promundo's last two years of funding prospectively, whereas City of Houston,

13

Suffolk County, and Modoc Lassen all involved claims to restore funding that had been withheld from past grant years. But that distinction does not dictate a different result here where all other indicators demonstrate that the agency would have used a particular *res*—the 2018 TPPP appropriation—to fund the grant period in question.

HHS explains that it used funds from the 2018 TPPP appropriation to fund the fourth budget periods of the program participants who successfully challenged HHS's early termination decision in court. Gov't Reply MTD at 7; see also supra 1 n.1. The specific *res* for those participants' fourth budget period is clearly the 2018 TPPP appropriation. This is consistent with the language in the past notices of awards—which anticipates using the fiscal year appropriation for the prior year to fund a particular budget period—as well as the agency's prior funding practices and the legal constraints on when the agency could obligate funds discussed above, see supra 7–8.

The Court therefore concludes that the specific *res* for the relevant grant period—Promundo's fourth budget period—is the 2018 TPPP appropriation. A court order requiring HHS to fund Promundo's fourth budget period "from any source of funds other than the [2018 TPPP] appropriation would constitute money damages rather than specific relief." City of Houston, 24 F.3d at 1428. And because the 2018 TPPP appropriation is no longer available for obligation, the Court will dismiss as moot Promundo's claims based on its fourth budget period.

B. Fifth Budget Period

While Promundo's claims regarding the fourth budget period are too late, its claims regarding the fifth period are too early. Promundo has had to scale back operations during the current fourth period for lack of funding. Compl. ¶¶ 57–61. And it fears that the agency will hold these changes against it when considering whether to fund its fifth and final budget period.

14

These fears are not unfounded: the agency does appear to take into account a grantee's annual progress when evaluating continuation applications. For example, the 2015 FOA explains that the agency's "commitment to continuation of awards will depend on the availability of funds, evidence of satisfactory progress by the recipient (as documented in required reports), and determination that continued funding is in the best interest of the Federal government." 2015 FOA at 94. And the annual continuation application requires a "[d]etailed narrative report . . . that directly addresses progress towards the Measures of Effectiveness." Id. at 124.

Notwithstanding the validity of Promundo's concerns, it has yet to submit a continuation application. HHS, therefore, has yet to determine whether to factor in the modifications Promundo has had to make when considering the application. Without a final agency decision, questions regarding Promundo's fifth budget period are not currently fit for judicial review because they "rest[] upon contingent future events that may not occur as anticipated, or indeed may not occur at all." Texas v. United States, 523 U.S. 296, 300 (1985) (internal citations and quotation marks omitted). "The interest in postponing review is powerful when the agency position is tentative." Ciba-Geigy Corp. v. EPA, 801 F.2d 430, 436 (D.C. Cir. 1986). In such a circumstance, the judiciary risks "improperly intrud[ing] into the agency's decisionmaking process" and "squander[ing] judicial resources" because "the challenging party still enjoys an opportunity to convince the agency to change its mind." Id. That said, government counsel has represented that HHS has set aside adequate funds for the fifth year of Promundo's grant (thus avoiding any mootness concerns), and Promundo still has the opportunity to convince the agency to release these funds. Should that effort fail, Promundo can renew the litigation. Without prejudging any further litigation, the Court would only note that it is difficult to imagine

15

circumstances under which it would uphold a denial of fifth-year funding based on project modifications caused by HHS's unlawful termination of Promundo's grant.

## IV. Conclusion

For the foregoing reasons, the Court will grant the government's motion to dismiss and deny as moot Promundo's motion for expedited summary judgment and a preliminary injunction. An Order accompanies this Memorandum Opinion.

Date: July 18, 2019

CHRISTOPHER R. COOPER
United States District Judge